IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMANDA B.,[1]                                  3:20-CV-00434-BR

       Plaintiff,                         OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

       Defendant.

**TIM D. WILBORN**
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137
(702)240-0184

       Attorney for Plaintiff

**SCOTT ASPAUGH**
Acting United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

    [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**EDMUND DARCHER**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2662

       Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Amanda B. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on June 19, 2017, alleging a disability onset date of March 1, 2016. Tr. 163-70.[1] The application was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on January 31, 2019. Tr. 31-68. Plaintiff was represented at the hearing.

---

[1] Citations to the official transcript of record filed by the Commissioner on September 29, 2020, are referred to as "Tr."

2 - OPINION AND ORDER

Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on February 15, 2019, in which he found Plaintiff is not entitled to benefits.  Tr. 13-25. Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on January 25, 2020, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born on September 21, 1985, and was 33 years old at the time of the hearing.  Tr. 164.  Plaintiff has a high school education and two years of college.  Tr. 204.  Plaintiff has past relevant work experience as a bartender, waitress, cashier, and caterer's helper.  Tr. 24.  Plaintiff alleges disability due to irritable bowel syndrome (IBS), severe anxiety, "back injury," panic attacks, a displaced tailbone, a neck injury, "constant body pain," carpal tunnel syndrome (CTS), chronic headaches, and insomnia.  Tr. 69.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 20-22.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v.*

5 - OPINION AND ORDER

*Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885

6 - OPINION AND ORDER

F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity after her March 1, 2016, alleged onset date.  Tr. 15.

At Step Two the ALJ found Plaintiff has the severe impairments of IBS, bipolar disorder, anxiety disorder,

depressive disorder, and post-traumatic stress disorder (PTSD). Tr. 15.  The ALJ found Plaintiff's back and neck injury, displaced tailbone, constant body pain, CTS, and chronic headaches are not medically determinable impairments.  Tr. 16.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 16.  The ALJ found Plaintiff has the RFC to perform light work except:

> [Plaintiff] can occasionally stoop, squat, crouch, crawl, kneel, and climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she is capable of engaging in unskilled, repetitive, routine tasks in two-hour increments; she should have no contact with public; she is capable of working in proximity to but not in coordination with co-workers; she can have occasional contact with supervisors; she would be up to 9% less productive than the average worker in the workplace; and she would be absent from work up to one and one-half days per month.

Tr. 18.

At Step Four the ALJ found Plaintiff cannot perform her past relevant work.  Tr. 24.

At Step Five the ALJ found Plaintiff can perform other work that exists in significant numbers in the national economy. Tr. 24.  Accordingly, the ALJ concluded Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony; (2) partially rejected the statement of Plaintiff's husband David B.; (3) partially rejected the opinion of treating mental-health professional Alicia Sager, Q.M.H.P.; and (4) found at Step Five that Plaintiff can perform other work that exists in the national economy.

## I.    The ALJ did not err when he partially rejected Plaintiff's testimony.

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show his "impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to

produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (same). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff testified at the hearing that she stopped working due to anxiety. Plaintiff stated she was "bawling in the middle of [every] shift and [her] heart was about to race out of [her chest]" from anxiety. Tr. 50. Plaintiff noted she gets anxious and disorganized when she has to go grocery shopping. Tr. 36. Plaintiff's anxiety also "make[s] it difficult or even impossible to get out the front door . . . more often than it should." Tr. 58. Plaintiff stated she missed appointments with doctors or counselors "quite a few times in the past year" due to her anxiety. Tr. 58. Plaintiff testified she cannot work due to side effects from the medications she takes for her anxiety.

Plaintiff takes Lithium three times per day, Zyprexa "usually in the evening," and Lorazepam three times per week as needed. Tr. 51.  Plaintiff testified her medications make her feel dizzy and have daily headaches, Lorazepam makes her "tired and dizzy," and Lithium makes her feel "tired and dull" and unable to concentrate.  Tr. 53-54.  Plaintiff stated she also cannot work due to IBS.  Plaintiff testified she is often severely constipated for four or five days and then she will have diarrhea and go to the bathroom ten times per day.  Plaintiff testified she has regular bowel movements "maybe a couple of days out of the whole month."  Tr. 63.

In her May 20, 2017, Adult Function Report Plaintiff stated she is unable to work due to anxiety, IBS, CTS, and chronic insomnia.  Plaintiff reported she does not handle stress or changes in routine well, is "scared of everything," and has nightmares constantly.  Tr. 226-27.  Plaintiff noted she "bath[es], feed[s], and dress[es] her [three] children daily," feeds her dogs, walks her dogs "when [she] feel[s] ok," can "sometimes" finish what she starts, is "good" with spoken instructions, and gets along with authority figures "wonderful[ly]."  Tr. 221-23.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity,

11 - OPINION AND ORDER

persistence and limiting effects of [her] symptoms are not
entirely consistent with the medical evidence and other evidence
in the record." Tr. 19.  The ALJ noted Plaintiff was able to
care for her three children.  In fact, in November 2018 Plaintiff
reported her husband did not "help at all with the caregiving or
keeping up with the house." Tr. 667.  Plaintiff testified at the
hearing that she is "in charge of making sure [her oldest
daughter] takes her medications at the right times and the right
dosages" and that she is "staying on top of that." Tr. 40.  The
ALJ also noted Plaintiff testified at the January 2019 hearing
she does not drive very often, but she also testified that in
December 2018 she drove her children to Idaho and back, which
indicated Plaintiff was capable of "fairly significant
concentration." Tr. 20.  The ALJ stated the record also does not
support Plaintiff's alleged level of impairment from IBS.
Specifically, on April 20, 2016, Plaintiff reported to the
emergency room complaining of "intermittent diarrhea and
constipation." Tr. 321.  Plaintiff's examination, however, was
unremarkable and Plaintiff was diagnosed with palpitations,
gastritis, and gastroesophageal reflux disease (GERD) and
prescribed "Prilosec over-the-counter twice daily." Tr. 323.  On
February 13, 2017, Plaintiff was seen by Amanda Christensen,
P.A.C., for abdominal pain and "irregular bowel habits."
Tr. 376.  Christensen noted Plaintiff underwent a CT scan, EGD,

and colonoscopy in January 2016 all of which were unremarkable.
Tr. 376.  Christensen diagnosed Plaintiff with IBS, mixed type;
prescribed one capful of MiraLAX daily for constipation; and
recommended a follow-up visit in two months.  Tr. 378.  Plaintiff
underwent an ultrasound in April 2017, which showed a mildly
echogenic liver consistent with fatty infiltration and was
otherwise normal.  Tr. 375.  Plaintiff did not undergo any
further follow-up treatment for IBS.

As to Plaintiff's anxiety, the ALJ noted the record reflects
Plaintiff's mental symptoms were generally well managed when she
consistently took the proper dosage of medication.  For example,
Plaintiff reported to Mahkameh Mehdianrad, P.A.C., in June 2016
that she began experiencing anxiety approximately four months
earlier when her boyfriend had a car accident.  Plaintiff
reported having nightmares, difficulty concentrating, psychomotor
symptoms, "somatic symptoms," tearfulness, fatigue, irritability,
and difficulty concentrating.  Tr. 342.  Mehdianrad noted
Plaintiff's "posture, behavior, mood[,]. . . affect . . .,
orientation, judgement, insight, . . . memory[,] . . . attention,
concentration, and thought content" were "all within normal
limits."  Tr. 343.  Mehdianrad prescribed sertraline and
melatonin.  Plaintiff saw Mehdianrad again on October 24, 2016,
at which time Plaintiff reported she took the sertraline for one
week and stopped because she "felt weird."  Tr. 339.  Plaintiff

was not on any medication between June 2016 and October 2016 for
her anxiety during which time Plaintiff reported experiencing
panic attacks, heart palpitations, difficulty concentrating,
insomnia, difficulty falling asleep, insomnia, and anxiety.
Plaintiff's posture, behavior, mood[,]. . . affect . . .,
orientation, judgement, insight, . . . memory[,] . . . attention,
concentration, and thought content," however, were "all within
normal limits."  Tr. 339.  Mehdianrad prescribed escitalopram for
anxiety and hydroxyzine for sleep.  On January 27, 2017,
Plaintiff reported to Mehdianrad that she had mild depression
"due to general pain in her body."  Tr. 336.  Mehdianrad
prescribed Cymbalta "for general pain" and recommended a follow-
up visit in three months "to adjust medication."  Tr. 337.  The
ALJ noted Plaintiff experienced a "brief period of exacerbation"
of her anxiety symptoms in July 2017.  Tr. 20.  On July 11, 2017,
Plaintiff was brought to the emergency room by her husband for
psychiatric evaluation.  Plaintiff reported Cymbalta had
"benefitted her panic attacks," but she had decreased her dosage
and experienced a number of stressors including the death of her
niece and her ex-husband being charged with abusing a child.
Tr. 448.  Plaintiff's husband reported Plaintiff had been
"increasingly manic seeming with limited sleep and labile mood"
and had "expressed concern that she and her family are being
watched."  Tr. 448.  The examining medical provider noted

14 - OPINION AND ORDER

Plaintiff's mood and affect were labile; her thought process was
"paranoid, delusional, [and] gradiose"; and her insight and
judgment were "impaired due to psychosis."  Tr. 449.  Plaintiff
did not want to stay in the hospital, and, after an evaluation,
she was discharged with prescriptions for lorazepam and Zyprexa.
The ALJ noted Plaintiff's mental symptoms improved significantly
after she started on lithium.  For example, on August 3, 2017,
which was three days after she started taking lithium, Plaintiff
was "clear, bright, [and] alert" on examination.  Tr. 500.  On
August 8, 2017, Plaintiff reported feeling "a lot more stable,"
having "a lot more clarity," and that "the lithium has helped a
lot."  Tr. 510.  Plaintiff continued to report "doing well" and
"feel[ing] much better" throughout August 2017.  Tr. 512, 514.
As a result, Plaintiff's crisis counselor at Lifeworks NW noted
on August 22, 2017, that it was "an appropriate time to close
[Plaintiff's] episode . . . as she is doing much better and has
positive supports in place."  Tr. 514.  On August 29, 2017,
treating psychiatrist Landy Sparr, M.D., noted Plaintiff had a
"recent probable manic episode after trying to discontinue
Cymbalta," but since taking lithium and Zyprexa she has "been
doing better," "feels more calm[,] and is sleeping better."
Tr. 532.  Plaintiff reporting having "GI side effects from her
medication," but Dr. Sparr recommended Plaintiff "wait and see if
side effects reduce with time."  Tr. 532.  On January 9, 2018,

Dr. Sparr noted Plaintiff continued to take lithium successfully and she was "rarely taking Zyprexa."  Tr. 585.

In September 2018 Plaintiff reported to Sequoia Mental Health Services noting she was having panic attacks "every couple of days."  Tr. 644.  Plaintiff stated she stopped taking Cymbalta in "June or July" of 2018, but she continued to take lithium and Zyprexa and to use marijuana.  Tr. 648-49.  Katie Lee, Q.M.H.P., recommended individual therapy sessions, cognitive-behavioral therapy, and medication management.  On November 16, 2018, P.M.H.N.P. James Devaney noted Plaintiff's memory was "intact for immediate, recent, and remote"; her insight and judgment were "good"; and she was "doing relatively well."  Tr. 656.  On January 3, 2019, Devaney noted Plaintiff's lithium "levels indicate levels below effective levels, . . . but [Plaintiff] concerned because previous dosage, which was effective, resulted in side effects."  Tr. 659.  Nevertheless, Plaintiff reported depression at 0/10, anxiety at 3/10, and psychotic symptoms at 2/10.  Tr. 659.  Devaney increased Plaintiff's lithium dosage and directed Plaintiff to have "lithium serum level draw within 7 to 10 days" for review.  Tr. 661.

The ALJ also noted Plaintiff's work and earnings history indicates Plaintiff worked "somewhat minimally and inconsistently well before the alleged disability onset date."  Tr. 22.  The ALJ stated that evidence "raises a question as to whether

[Plaintiff's] continuing unemployment is actually due to her medical impairments." *Id.*

The Court concludes on this record that the ALJ did not err when he partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**II.  The ALJ erred when he failed to consider the lay-witness statement of Plaintiff's husband David B., but the error is harmless.**

Plaintiff alleges the ALJ erred when he failed to consider the lay-witness statement of David B.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). When "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can

confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  *Id.* at 1056.

On May 18, 2017, David B. filled out a Third-Party Adult Function Report in which he noted Plaintiff's IBS "is severe and debilitating" because it "often . . . keeps her at home and prevents her from committing to a set schedule, or making plans more than a day or so ahead."  Tr. 213.  David B. stated Plaintiff's anxiety and panic attacks are "somewhat better with medication," but Plaintiff still has anxiety and panic attacks in "crowded and stressful situations."  *Id*.  David B. noted Plaintiff takes "care of [their] young children and does housework," but she "only ventures out from [their] house for grocery shopping or essential trips."  Tr. 214.  Plaintiff "calls relatives and friends," "visits family," and goes to her mother's house on a regular basis.  Tr. 217.  David B. noted Plaintiff is able to pay attention for an "above average" amount of time, she follows written instructions "well," and gets along with authority figures "fine."  Tr. 218.  Plaintiff is "decent" at handling changes in routine, but does not handle stress "well at all."  Tr. 219.

The ALJ failed to discuss David B.'s Third-Party Function Report, which Defendant concedes is error.  David B.'s report, however, is substantially similar to Plaintiff's testimony, and

the Court has already concluded the ALJ did not err when he
partially rejected Plaintiff's testimony because the ALJ provided
support for his opinion based on substantial evidence in the
record.  The Court, therefore, concludes the ALJ's error was
harmless because the Court concludes "no reasonable ALJ, when
fully crediting the testimony, could have reached a different
disability determination." *Stout*, 454 F.3d at 1056.

**III. Opinion of Treating Mental Health Professional Alicia Sager.**

Plaintiff alleges the ALJ erred when he partially rejected
the opinion of Q.M.H.P. Alicia Sager.

"Because plaintiff filed her application[] after March 27,
2017, new regulations apply to the ALJ's evaluation of medical
opinion evidence." *Christopher W. v. Comm'r*, No. 6:20-CV-
01632-JR, 2021 WL 4635801, at *6 (D. Or. Oct. 7, 2021).  "Under
the [new] regulations, an ALJ 'will not defer or give any
specific evidentiary weight, including controlling weight, to any
medical opinion(s) or prior administrative medical
finding(s)[.]'" *Id*. (quoting 20 C.F.R. §§ 404.1520c(a),
416.920c(a)).  "A prior administrative medical finding is a
finding, other than the ultimate determination about
[disability], about a medical issue made by . . . agency medical
and psychological consultants at a prior level of review . . . in
[a] claim based on their review of the evidence."  20 C.F.R.
§ 404.1513(a)(5).  In addition, the new regulations rescinded

SSR 06-03p in which the SSA "explained how [it] considers opinions and other evidence from sources who are not acceptable medical sources . . . . The [new] rules revised [this] polic[y]. . . . For example, in claims filed on or after March 27, 2017, the final rules state that all medical sources, not just acceptable medical sources, can make evidence that [it] categorize[s] and consider[s] as medical opinions." Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, SSR 96-2P 2017 WL 3928298, at *1 (S.S.A. Mar. 27, 2017).

"The ALJ must articulate and explain the persuasiveness of a [medical] opinion or prior finding based on 'supportability' and 'consistency,' the two most important factors in the evaluation. *Christopher W.*, 2021 WL 4635801, at *6 (quoting 20 C.F.R. §§ 404.1520c(a), (b)(1)-(2)). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Id.* (quoting 20 C.F.R. § 404.1520c(c)(1)-(2)).

> The ALJ may, however, is not required, to explain how other factors were considered including the relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements.

*Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), (c)(3)-(5)). *But see*

20 - OPINION AND ORDER

20 C.F.R. § 404.1520c(b)(3)(when an ALJ finds two or more
opinions about the same issue are equally supported and
consistent with the record but not exactly the same, the ALJ must
articulate how these "other factors" were considered).

On December 31, 2018, Sager completed a Mental Impairment
Questionnaire form in which she stated she had seen Plaintiff
bimonthly since September 18, 2018.  Tr. 614.  Sager noted
Plaintiff's diagnoses of bipolar disorder, generalized anxiety
disorder, and PTSD and that Plaintiff's medication causes her to
suffer dizziness, fatigue, confusion, headaches, "stomach upset,
[and a] tactile sensation in [her] brain that feels like popping
[that] effects balance."  Tr. 615.  Sager completed a check-the-
box form in which she indicated Plaintiff suffers from 53 out of
56 "signs and symptoms."  Tr. 616.  The three signs or symptoms
that Sager reported Plaintiff does not suffer from are
"pathological dependence, passivity or agressivity [*sic*]";
"catatonic or other grossly disorganized behavior"; and
"pathologically inappropriate suspiciousness or hostility."
Tr. 616.  Sager indicated Plaintiff "reported" she has "no useful
ability to function" in the following areas:  to complete a
normal workday and workweek without interruptions from
psychologically based symptoms, to perform at a consistent pace
without an unreasonable number and length of rest periods, and to
deal with normal work stress.  Tr. 617.  Plaintiff "self-

21 - OPINION AND ORDER

reported" that she is "unable to meet competitive standards" in the following areas:  remembering work-like procedures, maintaining attention for a two-hour segment, maintaining regular attendance and be punctual within customary tolerances, sustaining an ordinary routine without special supervision, making simple work-related decisions, asking simple questions or to request assistance, accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, setting realistic goals or to make plans independently of others, dealing with the stress of skilled or semiskilled work, and using public transportation.  Tr. 617-18. Sager indicated Plaintiff reported she is "seriously limited" in her ability to understand and to remember very short and simple instructions, to carry out very short and simple instructions, to work in coordination with or proximity to others without being unduly distracted, to respond appropriately to changes in a routine work setting, to be aware of normal hazards and to take appropriate precautions, to understand and to remember detailed instructions, to carry out detailed instructions, to interact appropriately with the general public, and to travel in an unfamiliar place.  *Id*.  Sager noted Plaintiff has a "limited but satisfactory" ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.

Tr. 618.  As a result of Plaintiff's self-reported limitations Sager stated Plaintiff has marked difficulties in maintaining social functioning, concentration, persistence, or pace and moderate restriction in her activities of daily living.  Tr. 619. Sager opined Plaintiff would have four or more "episodes of decompensation within a 12-month period, each of at least two weeks duration."  *Id*.  Sager indicated Plaintiff has a

> [m]edically documented history of a chronic organic mental, schizophrenic, etc., or affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, and . . .
>
> 1.  Three or more episodes of decompensation within 12 months, each at least two weeks long.
>
> 2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.
>
> 3.  Current history of l or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement [and]
>
> An anxiety related disorder and complete inability to function independently outside the area of one's home.

Tr. 619.  Sager anticipated Plaintiff's impairments would cause her to be absent from work more than four days per month. Tr. 20.

The ALJ found Sager's statements to be unpersuasive.

Tr. 23.  The ALJ noted Sager did not provide any medical support for her statements set out in the check-the-box form and that Sager indicated she relied on Plaintiff's self-reported limitations.  The ALJ also noted the degree of Plaintiff's mental impairment indicated by Sager is not supported by the record. For example, Sager indicated Plaintiff was unable to meet competitive standards in the area of accepting instructions and responding appropriately to criticism from supervisors, but Plaintiff stated in her Adult Function Report that she "get[s] along with authority figures" "wonderful[ly]."  Tr. 226. Similarly, David B. noted in his Third-Party Function Report that Plaintiff "get[s] along with authority figures" "fine."  Tr. 218. In addition, there is not any support in the record for many of the signs and symptoms Sager endorsed.  For example, the evidence does not indicate Plaintiff has "intense and unstable interpersonal relationships and impulsive damaging behavior." Tr. 616.  Rather, Plaintiff consistently reported having a "supportive social network" and being "very satisfied" with her marriage.  *See, e.g.,* Tr. 541, 563, 599, 660.  The record also does not support Sager's statement that Plaintiff has had three or more episodes of decompensation within twelve months, each at least two weeks long, or a current history of one or more "years' inability to function outside a highly supportive living arrangement."  Tr. 619.  Although the Ninth Circuit has not

24 - OPINION AND ORDER

addressed the issue, courts that have evaluated the term "highly supportive living arrangement" have held it includes places such as "a hospital, halfway house, board and care facility, or other environment that provides similar structure." *Chamberlain v. Berryhill*, No. 7:16-CV-337-RJ, 2018 WL 845544, at *8 (E.D.N.C. Feb. 13, 2018). *See also Morris v. Astrue*, No. 11-cv-248-JL, 2012 WL 4499348 (D.N.H. Sept. 28, 2012)(finding a highly structured setting existed in a prison environment); *Handy v. Astrue*, No. TMD 11-1317, 2012 WL 1605651 (D. Md. May 4, 2012) (finding a highly supportive living arrangement at a mental-health facility where the plaintiff lived and received treatment and medication). In contrast, courts have found a highly supportive living arrangement does not exist when a plaintiff lives in a group home and has his meals prepared and his medication distributed, but he is "free to come and go as he please[s]," *Miller v. Comm'r of Soc. Sec.,* No. 3:12 CV 3064, 2014 WL 916945 (N.D. Ohio Mar. 10, 2014), or when a plaintiff's girlfriend assists him with household chores and sometimes helps him to manage finances but the plaintiff is otherwise able to care for his personal needs on a regular basis. *Santiago v. Colvin*, No. 12 Civ. 7052(GBD)(FM), 2014 WL 718424 (S.D.N.Y. Feb. 25, 2014). *See also Gonsalves v. Astrue*, No. 09-181-BW, 2010 WL 1935753, at *4 (D. Me. May 10, 2010)("[A] 'highly structured living arrangement' is something other than living

with one's parents while taking care of most of one's personal needs and making substantial contributions to the household without a high degree of supervision; it refers to shelters or group homes, inpatient psychiatric treatment, or an inability to live on one's own."); *Chamberlain*, 2018 WL 845544, at *9 ("living with a roommate who does the majority of the housework, cooking, and driving is enough to qualify as a 'highly supportive living arrangement.'").  Plaintiff here, unlike the plaintiffs in *Morris* and *Handy,* was able to care for three young children, transport family members to and from Idaho, and grocery shop.

The ALJ also pointed out that the record indicated Plaintiff's symptoms improved and remained stable when she was on medication and attending therapy.

On this record the Court concludes the ALJ did not err when he partially rejected Sager's opinion because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

**IV.  The ALJ did not err at Step Five.**

Plaintiff asserts the ALJ erred at Step Five when he found Plaintiff can perform jobs that exist in significant numbers in the national economy.  Specifically, Plaintiff contends the ALJ erred when he found the opinion of reviewing psychologist Scott Kaper, Ph.D., was persuasive, but identified jobs in the national economy that have Reasoning Level Two, which, according to

Plaintiff, exceeds her capabilities as assessed by Dr. Kaper. Plaintiff also asserts the ALJ erred when he failed to include in his hypothetical to the VE all of Plaintiff's limitations as identified by both Dr. Kaper and Plaintiff.

As noted, the Commissioner must determine whether the claimant is able to do any other work that exists in the national economy if she reaches Step Five of the Regulatory Sequential Evaluation.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

### A.   Reasoning Level

Plaintiff asserts the ALJ erred when he found Plaintiff could perform jobs that require Reasoning Level Two.  The Dictionary of Occupational Titles (DOT) separates reasoning levels into six categories, two of which are relevant here:

> Level One:      Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with

> occasional or no variables in or
> from these situations encountered
> on the job.

> Level Two:      Apply commonsense understanding to
> carry out detailed but uninvolved
> written or oral instructions.  Deal
> with problems involving a few
> concrete variables in or from
> standardized situations.

DOT, App. C, 1991 WL 688702.  The VE identified three jobs that

Plaintiff could perform, all of which require Reasoning Level

Two.  In his Mental Residual Functional Capacity Assessment of

Plaintiff Dr. Kaper found Plaintiff was not significantly limited

in her ability to carry out "very short and simple instructions,"

but she was moderately limited in her ability to carry out

detailed instructions.  Tr. 94.  Dr. Kaper concluded Plaintiff is

"capable of completing simple routine work tasks.  MH sxs would

interfere with her ability to consistently carry out detailed or

complex tasks."  Tr. 95.  Plaintiff contends this limitation is

consistent only with Reasoning Level One.

        The Ninth Circuit has not held a claimant's limitation

to simple, routine tasks indicates a claimant is limited to jobs

with Reasoning Level One.  In fact, the Ninth Circuit has held a

"claimant's limitation to 'simple and routine work tasks' is

'inconsistent with the demands of level-three reasoning' because

the plaintiff's residual functional capacity was more consistent

with *Level 2* than Level 3 Reasoning."  *Zavalin v. Colvin*, 778

F.3d 842, 846-47 (9th Cir. 2015)(emphasis added)(quotation

omitted).  District courts within the Ninth Circuit have reached
the same conclusion.  *See Gilbert v. Colvin*, 6:14-cv-00394-AA,
2015 WL 1478441, at *6-*7 (D. Or. Mar. 31, 2015)(collecting cases
and concluding an ALJ's erroneous finding that a treatment
provider's "report 'does not support a finding that [plaintiff]
cannot perform complex tasks'" was harmless because the ALJ
relied on occupations that only required Reasoning Level Two).

The Court concludes the limitation to "unskilled,
repetitive, routine tasks in two-hour increments" and "up to 9%
less productive than the average worker" in the ALJ's assessment
of Plaintiff's RFC is consistent with Dr. Kaper's assessed
limitations as well as Reasoning Level Two.  The Court,
therefore, concludes the ALJ did not err at Step Five when he
relied on the VE's testimony that a significant number of jobs
exist in the national and regional economy that Plaintiff can
perform.

**B.   Hypothetical to the VE**

As noted, Plaintiff alleges the ALJ erred when he
failed to include all of Plaintiff's limitations in his
hypothetical to the VE.  Specifically, Plaintiff alleges the ALJ
failed to include limitations identified by Plaintiff and David
B. in their statements and by Sager in her opinion.

The Court has already concluded the ALJ did not err
when he rejected portions of limitations asserted by Plaintiff,

29 - OPINION AND ORDER

David B. and Sager.  On this record, therefore, the Court also
concludes ALJ did not err when he did not include those
limitations in his hypothetical to the VE.

**V.   Other Issue**

On September 21, 2021, Plaintiff filed Supplemental
Citations to Intervening Case Law in which she asserts the United
States Supreme Court's decisions in *Seila Law LLC v. CFPB*, 140 S.
Ct. 2183 (2020), and *Collins v. Yellin*, 141 S. Ct. 1761 (2021),
establish:  (1) the limitation on the President's power to remove
the Commissioner of the SSA is unconstitutional; (2) the
Commissioner who was heading the SSA at the time Plaintiff's DIB
application was pending before the Appeals Council was not
properly in office; and, therefore, (3) the ALJ who heard and
decided Plaintiff's case and the Appeals Council who decided
Plaintiff's appeal were without constitutional authority to do
so.  The Court disagrees.

As one court explained:

> [U]nlike [in] *Seila Law*, Plaintiff does not allege
> facts that support a finding that her injury, the
> denial of disability benefits, can be or is traced
> to the conduct of the SSA Commissioner. . . .
> Plaintiff has not alleged any facts or provided
> any evidence . . . suggesting that when the ALJ
> denied her claim for Social Security benefits, the
> then-SSA Commissioner played any role whatsoever
> in that decision.  Unlike the Director of the CFPB
> who was directly involved in decisions that
> impacted and caused alleged injury to *Seila Law*,
> Plaintiff does not allege . . . the SSA
> Commissioner took any action that is in any way
> related to the ALJ's decision.

> \* \* \*
> Plaintiff has not shown that whether the President
> could remove the SSA Commissioner without
> limitations or an acting commissioner was in
> office beyond the statutory 210 days allowed
> impacted the independence of the ALJ or [the]
> decision in Plaintiff's case.  It is well settled
> that the ALJ must "exercise[ ] his independent
> judgment on the evidence before him...." *Brennan
> v. Dep't of Health & Human Servs.*, 787 F.2d 1559,
> 1562 n.1 (Fed. Cir. 1986)(quoting *Butz v.
> Economou*, 438 U.S. 478, 513 (1978)).  Because
> Plaintiff offers nothing that traces the decision
> by the ALJ in her case to any alleged injurious
> conduct by the SSA Commissioner, she has not
> demonstrated traceability and her constitutional
> violation claim fails for lack of standing.

*Brinkman v. Kijakazi*, No. 2:21-CV-00528-EJY, 2021 WL 4462897, at

\*2 (D. Nev. Sept. 29, 2021)(citing *Seila Law*, 140 S. Ct. at 2196;

*Collins*, 141 S. Ct. at 1779.  Plaintiff here like the plaintiff

in *Brinkman*  does not allege "the SSA Commissioner took any

action that is in any way related to the ALJ's decision" or the

decision by the Appeals Council.

The Court, therefore, concludes the authorities cited by

Plaintiff in her supplemental briefing do not affect the

disposition of this matter.


## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the

Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

    DATED this 26th day of October, 2021.


                /s/ Anna J. Brown

_____
                ANNA J. BROWN
                United States Senior District Judge